**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM DEROSA, | Civil Action No. 2:16-cv-07516 (JLL) |
| Plaintiff, | |
| v. | **OPINION** |
| CRAIG M. MCKENZIE | |
| Defendant. | |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant's, Craig M. McKenzie ("Defendant" or "Mr. McKenzie"), Motion to Dismiss (ECF No. 5, "Def.'s Mot. Dismiss") Plaintiff's, William DeRosa ("Plaintiff" or "Mr. DeRosa"), Complaint (ECF No. 1, "Compl.") for lack of personal jurisdiction under Federal Rule of Civil Procedure 12 (b)(2), *res judicata* and, in the alternative, transfer of venue pursuant to 28 U.S.C. § 1404 (a). In accordance with Federal Rule of Civil Procedure 78, the Court has considered the submissions of the parties and decides this matter without oral argument. For the reasons set forth below, the Court grants Defendant's Motion to Dismiss.

## BACKGROUND

Dakota Plains Holdings Inc. ("Dakota Plains") is an energy transportation company which operates a Pioneer Terminal transloading facility in North Dakota. Compl. ¶ 4. During the relevant time period, Defendant, a Minnesota resident, served as the Chairman and Chi

1

Executive Officer of Dakota Plains.  Id.   In 2014, Lone Star Value Management ("Lone Star")
acquired a substantial equity stake in Dakota Plains (the "Lone Star Acquisition").  Id ¶ 7. In
light of the Lone Star Acquisition, Lone Star and Dakota Plains executed an agreement entitling
Lone Star to place a nominee on the Dakota Plains Board of Directors (the "Dakota Plains
Board").  Id ¶ 7.   As a result of said agreement, Plaintiff, the former Director of Research at
Lone Star and a New Jersey citizen, was nominated in July 2014 as the sole representative to
serve on the Dakota Plains Board.  Compl. ¶ 3; Def.'s Mot. Dismiss 1.   Plaintiff served on the
Dakota Plains Board from 2014 until 2015. Compl. ¶ 4.

    During his tenure as the Director of Research at Lone Star, Plaintiff reported to Jeffrey
Eberwein ("Mr. Eberwein"), the Chief Executive Officer of Lone Star.  Id.  Since the Lone Star
Acquisition, Plaintiff contends that a Non-Disclosure Agreement ("Agreement")[1] existed
allowing the sharing of confidential information between Lone Star and Dakota Plains.  Id.  As a
result of the Agreement, Plaintiff claims that he was entitled and expected to share non-public
information with Mr. Eberwein, and also with other officers and employees of Lone Star.  Id.

    Within two months of Plaintiff's appointment to the Dakota Plains Board, Plaintiff claims
that Defendant began accusing him of "immaturity" and a "lack of understanding" and further
avers that Defendant stated Plaintiff's requests for proper board procedures at Dakota Plains
"was becoming a distraction."  Id. ¶ 8.   Plaintiff asserts that shortly thereafter, Defendant began
to allege that Plaintiff had improperly "leaked" confidential information to Mr. Eberwein, despite
supposedly knowing that any such disclosure was explicitly permitted by the Agreement. Id.
Plaintiff alleges that his appointment to the Dakota Plains Board and his suggestions regarding

---

[1]Plaintiff contends that this agreement was termed as Non-Disclosure Agreement ("Agreement") because of its
prohibition that Lone Star could not disclose the information it received to third parties, and not as a conflicting
prohibition against sharing information with Lone Star.  Compl. ¶ 7.

the proper corporate governance protocols were poorly received by the Defendant and as a result, Defendant set forth the defamatory statements. Id.

Thereafter, Plaintiff asserts that a disagreement developed between Lone Star and Dakota Plains in January 2015. Plaintiff maintains that the disagreement stemmed from Lone Star's concern with Dakota Plains' management decisions and purported failure to adhere to appropriate corporate governance protocols. Id. ¶ 9. Plaintiff claims that the Dakota Plains Board consequently adopted new by-laws prohibiting the sharing of confidential information with Lone Star, despite the provisions in the Agreement which permitted such sharing. Id. After the institution of the new by-laws, Plaintiff argues that Defendant then accused Plaintiff of violating said by-laws. Id.

Per Lone Star's request, Plaintiff resigned from his position as Director of Research on February 13, 2015. Id. Subsequently, Dakota Plains filed an 8-K statement with the Securities and Exchange Commission maintaining that Plaintiff had resigned for personal reasons. Id. Immediately thereafter, on February 23, 2015, Dakota Plains commenced a lawsuit against Plaintiff in the Nevada State Court, claiming he breached his fiduciary duties to Dakota Plains, by "routinely and inappropriately pass[ing] confidential Board information to Jeffrey E. Eberwein." Id. ¶ 10; Def.'s Mot. Dismiss 2.

During the pendency of the Nevada State court action, Dakota Plains issued a press release (the "Press Release") on March 18, 2016 which included the following assertions:

> Moreover, after the Company appointed William DeRosa of Lone Star Value to the Board in 2014, Mr. DeRosa subsequently violated his fiduciary duties to all stockholders and committed unlawful acts by sharing material non-public information. Mr. DeRosa resigned from the Board because of his breach of fiduciary duty and will stand trial in court for his actions later this year.

Id. ¶ 11.   Additionally, the Press Release informed readers of how to obtain a copy of the complaint from the Nevada State Court proceedings against Plaintiff.  Id.  The Press Release was published by the Business Wire, a wire service read by businesses and individuals in the financial community.  Id. ¶ 12.

Pursuant to Nev. R. Civ. P. 68, Dakota Plains made an offer of judgment to the Plaintiff of which was accepted by the Plaintiff.  Def.'s Mot. Dismiss 3.  Thereafter, on October 27, 2016, the Nevada State Court accepted the Rule 68 disposition and entered judgment. Id. The matter was dismissed with prejudice pursuant to Nev. R. Civ. P. 41. Compl. ¶ 10; Def.'s Mot. Dismiss 3.  Plaintiff maintains that he received $10,000 as a result of the agreement. Compl. ¶ 10.

Plaintiff commenced an action with this Court on October 19, 2016, by filing the instant Complaint which alleges: i.) Defamation Per Se and ii.) Intentional Infliction of Emotional Distress.  On December 19, 2016, Defendant filed the Motion to Dismiss currently pending before the Court claiming that: i.) the Complaint should be dismissed for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12 (b)(2); ii.) Plaintiff's claims are barred by *res judicata* as a result of the Nevada State Court judgment; iii.) in the alternative, venue should be transferred to the District of Minnesota under 28 U.S.C. § 1404 (a).   In response, Plaintiff filed a Brief in Opposition to Defendant's Motion to Dismiss (ECF No. 8, "Pl.'s Opp'n Br.") on January 19, 2017.  On January 30, 2017, Defendant filed a Reply to Plaintiff's Response (ECF No. 9, "Def.'s Reply Br.").  Plaintiff filed a Sur-reply (ECF No. 15, "Pl.'s Reply") on March 8, 2017.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12 (b)(2), a Court must dismiss a cause of action if the Court does not have personal jurisdiction over the Defendant.  To determine if the exercise of personal jurisdiction over a nonresident defendant is appropriate, a court sitting in diversity

must engage in a two-step process. *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998).  The Court must first look to the state's long arm statute to determine if its application confers personal jurisdiction over the defendant. *See Miller Yacht Sales, Inc. v. Smith*, 384 F. 3d 93, 96 (3d Cir. 2004)("A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law."); *see also* 28 U.S.C. § 1332. "[N]ext, the Court must apply the precepts of the Due Process Clause of the Constitution." *IMO Indus.*, 155 F. 3d at 259.

In New Jersey, the two-step "inquiry is collapsed into a single step" as its long-arm statute allows a court to exercise personal jurisdiction over non-resident defendants to the full extent allowed under the due process requirements of the United States Constitution.  *See Id.* (citing *Mesalic v. Fiberfloat Corp.*, 897 F. 2d 696, 698, n.5 (3d Cir. 1990)); *see also* N.J. Ct. R. 4:4-4 (authorizing personal jurisdiction "consistent with due process of law"). "The New Jersey Supreme Court has made it clear that New Jersey courts look to federal law for the interpretation of the limits on in personam jurisdiction." *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981); *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007); *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987).

Personal jurisdiction over an out-of state defendant is permitted by the Fourteenth Amendment only when "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).   Accordingly, it is not-necessary for the defendant to be physically present in the forum for personal jurisdiction to exist, rather "personal jurisdiction under the Due Process Clause depends upon the relationship among the defendant, the forum and the

litigation." *Burger King Corp.*, 471 U.S. at 467; *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).
"Personal jurisdiction over a nonresident defendant may be asserted in two situations." *Dollar
Sav. Bank v. First Sec. Bank, N.A.*, 746 F.2d 208, 211 (3d Cir. 1984).   First, "general
jurisdiction" is present when the cause of action does not "arise out of or is unrelated to the
defendant's contacts with the forum." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984); *Rush v. Savchuk*, 444 U.S. 320 (1980); *Carteret Sav. Bank, FA v. Shushan*,
954 F.2d 141, 149 (3d Cir. 1992)(citing *Dollar Sav. Bank*, 746 F.2d at 211 (3d Cir. 1984)); *Time
Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61 (3d Cir. 1984); *Hendrickson v. Reg O Co.*,
657 F.2d 9 (3d Cir. 1981).   Second, "specific jurisdiction" is invoked when the claim is related to
or arises out of the defendant's contacts with the forum.  *See Keeton v. Hustler Magazine*, 465
U.S. 770 (1984); *Calder v. Jones*, 465 U.S. 783 (1984); *World-Wide Volkswagen Corp. v.
Woodson*, 444 U.S. 286 (1980); *Reliance Steel Prods Co. v. Watson, Ess, Marshall and Enggas*,
675 F.2d 587 (3d Cir. 1982).

General jurisdiction refers to a court's power to "hear any and all claims" against an out-
of-state entity or person when its "affiliations with the State are so continuous and systematic as
to render [it] at home in the forum state." *Daimler AG v. Bauman,* 134 S. Ct. 746, 751
(2014) (internal quotations and citations omitted).   Moreover, this requires that the plaintiff
demonstrate "significantly more than mere minimum contacts to establish general jurisdiction."
*Provident Nat'l Bank*, 819 F. 2d at 436 (quoting *Helicopteros*, 466 U.S. at 414)(internal
quotations omitted)).

Specific jurisdiction, by contrast, refers to a court's power to hear claims that specifically
"arise[] out of a defendant's contacts with the forum." *See Helicopteros,* 466 U.S. at 414; *see
also Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 108-9 (1987) ("[The]

6

constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established minimum contacts in the forum State.") (citing *Burger King Corp.*, 471 U.S. at 474 (quoting *Int'l Shoe*, 326 U.S. at 316)(internal quotations omitted)). Specific jurisdiction satisfies due process when the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros*, 466 U.S. at 414 (quoting *Int'l Shoe*, 326 U.S. at 316). In order for a court to properly exercise specific jurisdiction, the plaintiff must first establish the defendant's minimum contacts with the forum and, assuming plaintiff fulfills this burden, the court must next inquire into whether "the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp.,* 471 U.S. at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at 320)(internal quotations omitted)).

In establishing minimum contacts, the plaintiff must demonstrate that the defendant's minimum contacts with the forum are sufficient for the defendant to "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp,* 444 U.S. at 286. What constitutes minimum contacts depends on "the quality and nature of the defendant's contacts." *Hanson*, 357 U.S. at 253. Next, in determining if the exercise of personal jurisdiction comports with the notions of fair play and substantial justice, a court must assess if it is reasonable to require the defendant to defend suit in the forum state. *Id.* at 292. To evaluate reasonableness, a court takes into account the following considerations: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering substantive social policies. *Knierim v.*

*Siemens Corp.*, No. 6-4935, 2008 U.S. Dist. LEXIS 26571, at * 17 (N.J.D. Mar. 31, 2008)(citing

*World-Wide Volkswagen,* 444 U.S. at 292.

"Once challenged, the Plaintiff bears the burden of establishing personal jurisdiction."

*O'Connor*, 496 F. 3d at 317; *Carteret Savings Bank*, 954 F.2d at 146(Once defendant raises the

defense of lack of personal jurisdiction, "the plaintiff bears the burden to prove, by a

preponderance of evidence, facts sufficient to establish personal jurisdiction.")  Furthermore, the

Plaintiff must prove that personal jurisdiction exists "by affidavits or other competent evidence."

*Dayhoff Inc. v. H.J. Heinz Co.*, 86 F. 3d 1287, 1302 (3d Cir. 1996).  However, if the District

Court does not hold an evidentiary hearing concerning the appropriateness of exercising personal

jurisdiction "the plaintiff need only establish a prima facie case of personal jurisdiction and the

plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its

favor." *Miller Yacht Sales*, 384 F. 3d at 97.

## DISCUSSION

Plaintiff brings the instant action alleging two counts: i.) Defamation Per Se (Count I);

and ii.) Intentional Infliction of Emotional Distress (Count II).   Plaintiff requests that the Court

exercise personal jurisdiction over the Defendant regarding these two claims.

Plaintiff alleges that the Press Release was false and defamatory. Id. ¶ 13.  First, Plaintiff

contends that he did not breach any fiduciary duties, since he argues that all of his

communications with Lone Star were permitted pursuant to the Agreement.  Id.  Plaintiff further

claims that in this regard, due to Defendant's failure to state that the "material non-public

information" had been shared only with Lone Star, with which there existed the Agreement, the

release create the false implication that Plaintiff improperly provided confidential information to

third parties not covered by a Non-Disclosure Agreement, tantamount to accusing him of

8

engaging in insider trading activities.  Id.  Secondly, Plaintiff purports that he did not commit any unlawful acts.  Id. ¶ 14.   Third, Plaintiff asserts the release falsely states that Plaintiff violated his fiduciary duties *and* committed "unlawful acts," directly accusing him of illegality beyond any fiduciary breach.  Id. ¶ 15.  Plaintiff claims that at no time was he accused of illegality beyond the disclosures to Lone Star.  Id.  Fourth, Plaintiff contends that the Press Release falsely states that he "resigned from the Board because of this breach of fiduciary duty." Id. ¶ 16. Plaintiff claims that he did not resign because of his supposed breach of a fiduciary duty, but rather he resigned because Lone Star requested his resignation, and to state otherwise is to further and falsely allege that Plaintiff has acknowledged wrongdoing, which Plaintiff vehemently denies. Id.  Plaintiff further contends that the defamatory statement in this regard is further contradicted by the Dakota Plains 8-K statement that Plaintiff resigned for personal reasons. Id.  Plaintiff contends that the accusation that he has acknowledged wrongdoing serves to heighten and aggravate the previous defamations.

Regarding the IIED claim, Plaintiff alleges that as a result of the actions of the Defendant, he "has experienced extreme emotional distress" and also that he "was harmed, his standing and reputation among the community was impaired, he suffered financially and he has suffered mental anguish and personal humiliation." Compl. ¶¶ 35, 36.

Defendant contends that the Complaint fails to establish any specific allegations to sustain a finding of jurisdiction over the Defendant.  In the event the Court finds personal jurisdiction exists over the Defendant, Defendant urges that Plaintiff's defamation claim was released in the Nevada action, dismissed with prejudice and therefore is barred by *res judicata*. In the alternative, if the Court determines that personal jurisdiction may be exercised over the Defendant and Plaintiff's defamation claim is not precluded by the Nevada State Court judgment

9

Defendant requests that that the action be transferred to the United States District Court for the District of Minnesota under 28 U.S.C. § 1404 (a).

For the reasons discussed below, the Court finds that Defendant does not have sufficient minimum contacts with the State of New Jersey for this Court to exercise jurisdiction over the Defendant.

### A. Personal Jurisdiction over Plaintiff's Defamation and IIED Claims

The Supreme Court, in *Calder v. Jones*, 465 U.S. 783 (1984), established the standard to determine personal jurisdiction over a nonresident defendant who committed an alleged intentional tort outside of the forum state. The facts of *Calder* involved an allegedly libelous National Enquirer article regarding the activities of a Hollywood celebrity in California, the states in which she resided. The article appeared in the National Enquirer and set forth allegations that the entertainer was unable to fulfill professional obligations due to an issue with alcohol. The article was written and edited in Florida and Defendants had no California contacts. Though nationally distributed, the Enquirer's largest circulation was in California. As a resident of California and an entertainer, the plaintiff alleged that the article had the most significant impact in California. The Supreme Court held that personal jurisdiction existed over the author and editor defendants in California because the "effects" of the Defendants' conduct in Florida were primarily felt in California, where the plaintiff lived and worked. The Supreme Court emphasized that the defendants committed an intentional tort, rather than mere negligence, which was aimed directly at a resident in California in the forum state. *See generally Calder v. Jones,* 465 U.S. 783 (1984).

In *IMO Indus. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998), the Third Circuit applied the Calder "effects" test and determined that the test requires a Plaintiff to establish the following

three prongs in order to determine if a Court has personal jurisdiction over the defendant: "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). After applying the *IMO* test and carefully reviewing the submissions of the parties, the Court concludes that Plaintiff has failed to set forth sufficient factual allegations to fulfill the third prong of *IMO*. The Court therefore finds it lacks personal jurisdiction over the Defendant in regards to the Defamation and IIED claims.

At the outset, Defendant argues that the Complaint is devoid of any allegations establishing jurisdiction over him. Defendant contends that he has no meaningful contacts with the state of New Jersey. In support of this assertion, Defendant sets forth that:

> He is not a citizen of New Jersey. He owns no property or assets in New Jersey. Mr. McKenzie has never paid income tax or property tax in New Jersey. He has never conducted any personal business in New Jersey. He has no family or relatives in New Jersey and has traveled there only sparingly to visit friends. Mr. McKenzie has never traveled to New Jersey to see Mr. DeRosa or to conduct any business with him in that state. The only manner in which Mr. McKenzie "dealt" with Mr. DeRosa was infrequently buy phone and email from his office or home, both of which are located in Minnesota.

Def.'s Mot. Dismiss 6. Defendant resides in Minnesota, Dakota Plains' principal office is in Minnesota, as are a vast majority of the documents and evidence relating to the case. Furthermore, the Defendant contends the actions alleged to have given rise to this case all occurred in Minnesota. Id. 11. Defendant asserts that the action stems from the issue of whether Plaintiff breached his fiduciaries duties to Dakota Plains which is located in Minnesota. Id. Defendant maintains the press release was not purposefully directed to the State of New Jersey,

or anyone in that state. The Defendant argues that the fact that the press release eventually seen by the Plaintiff in New Jersey is insufficient to confer personal jurisdiction over the Plaintiff. Id.

The only language included in the Complaint sets forth that the alleged tortious "conduct caused Mr. DeRosa damages in the form of injury to his reputation throughout the United States", "by publishing the [] statements, [D]efendant knew they would be republished and read by the general public throughout the United States and elsewhere", and that "the [] statements have been widely published throughout the United States and elsewhere." Compl. ¶¶ 23, 24, 28. The Complaint fails to include any language that establishes that the Defendant expressly aimed the alleged defamatory statements at New Jersey so that the forum can be said to be the focal point of the alleged tortious activity. Additionally, Plaintiff asserts that the Press Release was published over the Business Wire, which Plaintiff maintains is a wire service widely read by businesses and individuals in the financial community, including those may who know Plaintiff as well as many who could be considered potential employers of Plaintiff. Compl. ¶ 11.

In response to Defendant's jurisdictional challenge, Plaintiff sets forth the following: first, the Business Wire publication press release was uniquely aimed at and connected to the financial community, which is concentrated in New York and New Jersey, thus denying personal jurisdiction would violate the intent of the Supreme Court's decision in *Calder*, second, the Third Circuit in *IMO* made clear that it was applying the factors set forth in *Calder* "'outside the defamation context' as the case before it involved tortious interference, a 'business tort[]'" *IMO Idus., Inc.,* 155 F. 3d at 256-61, and lastly, case law from the Eight Circuit, First Circuit and Third Circuit support a finding of personal jurisdiction over the Defendant. *See* Pl.'s Opp'n Br.

Plaintiff argues that the since the Press Release was published over the Business Wire, which Plaintiff asserts is a wire service widely read by businesses and individuals in the financial

12

community, including many who know the Plaintiff as well as many who may be considered

potential employers of the Plaintiff, this Court should exercise personal jurisdiction over the

Defendant. Compl. ¶ 12.  Furthermore, Plaintiff asserts that the "Business Wire is widely

distributed in the New Jersey/New York area, which is the hub of financial management and

investment professionals.  The defamatory statements were malicious, and caused reputational

and emotional injury to Mr. DeRosa in the center of the financial industry where he lives and

continues to seek employment." Id. 7.   Plaintiff argues that the "defamatory statements could be

anticipated to have the widest circulation and cause the greatest injury in this forum.  The

Business Wire publication of the press release was uniquely aimed at and connected to the

financial community, which is concentrated in New York and New Jersey. The denial of

personal jurisdiction here would violate the letter and intent of the Supreme Court's decision in

*Calder.*" Id. 8.    The Court finds that, as highlighted by *IMO*, "*Calder*'s holding cannot be

severed from its facts."[2] *IMO Indus.*, 155 F. 3d at 261.   The Supreme Court set forth that:

> The allegedly libelous story concerned the California activities of a California
> resident. It impugned the professionalism of an entertainer whose
> television career was centered in California. The article was drawn from
> California sources, and the brunt of the harm, in terms of both respondent's
> emotional distress and the injury to her professional reputation, was suffered in
> California. In sum, California is the focal point both of the story and of the harm
> suffered. Jurisdiction over petitioners is therefore proper in California based on
> the "effects" of their Florida conduct in California. . . . Their intentional, and
> allegedly tortious, actions were expressly aimed at California. Petitioner South
> wrote and petitioner Calder edited an article that they knew would have a
> potentially devastating impact upon respondent. And they knew that the brunt of
> that injury would be felt by respondent in the State in which she lives and works
> and in which the National Enquirer has its largest circulation.

*IMO Indus*, 155 F.3d at 260-61 (quoting *Calder*, 465 U.S. at 789-90).  Here, Plaintiff has failed

to sufficiently set forth facts that the Press Release's circulation was the largest in New Jersey

---

[2] The Court notes that *IMO* makes this assertion prior to applying the three prong test in the context of business torts.

and that by virtue of the Press Release's publication over the Business Wire the Plaintiff knew that the Press Release would be most widely distributed in New Jersey, if in fact the Press Release was most widely distributed in New Jersey.

Moreover, the Court agrees with the Defendant and finds that Plaintiff's assertions are devoid of any language demonstrating that the Defendant engaged in specific activity that expressly aimed the alleged tortious conduct at the State of New Jersey so that New Jersey may be considered the focal point of the tortious activity and therefore Plaintiff's claims of Defamation and IIED fail for want of personal jurisdiction. The third prong of the *IMO* test requires a plaintiff to establish that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *IMO Indus*, 155 F. 3d at 266. Plaintiff's submissions are absent of any showing that the Defendant expressly aimed the Press Release at New Jersey.   Though the fact the Plaintiff felt the brunt of the harm in New Jersey in regards to his emotional distress and injury to his professional reputation are necessary to confer jurisdiction, however, these factors are not sufficient. *See Calder*, 465 U.S. at 788-90; *see also IMO Indus.*, 155 F.3d at 268 (quoting *Far W. Capital v. Towne*, 46 F. 3d 1071, 1077 (10th Cir. 1995)("[P]hone calls and letters are not necessarily sufficient in themselves to establish minimum contacts' when the focus of the dispute is outside the forum.")(internal quotations omitted).  It must also be shown, as in *Calder*, that the Defendant knew that the brunt of the injury would be felt by the Plaintiff in the state in which he lives and works. Id.  Plaintiff has failed to set forth any allegations to demonstrate that New Jersey where the Business Wire's publication had inadvertently reached, was the focal point of Defendant's conduct of which he specifically aimed at New Jersey as "[t]he mere allegation that the plaintiff feels the effect of the

14

defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder*." *Dluhos v. Strasberg*, No. 00-3163 (JCL), U.S. Dist. LEXIS 34385, at *15 (D.N.J. June 23, 2005) (citing *Zieper v. Reno,* 111 F. Supp. 2d 484, 491-92 (D.N.J. 2000)).

Plaintiff also alleges that the Third Circuit in *IMO* applied the facts of *Calder* outside the defamation context and therefore *IMO* is inapplicable to instant action. Pl.'s Opp'n Br. 8.  The Court finds that Plaintiff's argument fails as courts within this jurisdiction have consistently applied the test in *IMO* to defamation actions in order to determine whether personal jurisdiction exists. *See Knierim v. Siemens Corp.*, No. 06-4935 U.S. Dist. LEXIS 26571, at *27 (D.N.J. Mar. 31, 2008)(finding the Court lacked personal jurisdiction over defendant and dismissing plaintiff's defamation claim after applying *IMO* three prong test)(quoting *IMO Indus*, 155 F. 3d at 266); *see also Zieper v. Reno*, 111 F. Supp. 2d 484, 492 n.2 (D.N.J. 2000)("The *IMO* holding does not expressly limit itself to the context of business torts. The 'three principal findings' relied on in *Calder*, none of which draw a distinction between personal injuries and business injuries, are the same three considerations considered relevant by the *IMO* court.").

In further support of its jurisdictional argument, Defendant maintains that it lacks minimum contacts with the State of New Jersey and additionally avers that even if Plaintiff can establish Defendant has sufficient minimum contacts with New Jersey, fair play and substantial justice cannot support a finding of personal jurisdiction. Id. 11.   However, because the Court finds that Defendant lacks minimum contacts with the forum to establish jurisdiction over the Defendant, it is unnecessary to assess whether the notions of fair play and substantial justice render jurisdiction over the Defendant reasonable.  Therefore, as discussed above, the Court finds that Plaintiff has failed to establish Defendant has the requisite minimum contacts with

New Jersey to sustain jurisdiction in this forum. The Court dismisses this action for lack of personal jurisdiction.

      B. *Res Judicata*

      Plaintiff contends that even if the Court decides that it can exercise personal jurisdiction over the Defendant, Plaintiff's defamation claim was released in the Nevada action, dismissed with prejudice and therefore barred by *res judicata*. Because this Court lacks personal jurisdiction over the Defendant, the Court will not address the issue of *res judicata*.

      C. Transfer of Venue

      Lastly, Defendant requests, pursuant to 28 U.S.C. § 1404 (a), that this action be transferred to the District of Minnesota in the event the Court finds that it exercises personal jurisdiction over Mr. McKenzie and Mr. DeRosa's Claim is not precluded by the Nevada judgment. Because the Court finds that is lacks personal jurisdiction over the Defendant, the Court does not have jurisdiction to decide this issue.

## CONCLUSION

In light of the foregoing, the Court finds that it lacks personal jurisdiction over the Defendant pursuant to Federal Rule of Civil Procedure 12 (b)(2) and therefore grants Defendant's Motion to Dismiss.  An appropriate order accompanies this Opinion.


DATED: March _27th_ 2017


JOSE L. LINARES
UNITED STATES DISTRICT JUDGE